UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
....................................................................

DAVID THAI,

               Petitioner,                                  NOT FOR PUBLICATION

     -against-                                      MEMORANDUM & ORDER

                                                  99 CV 7514 (CBA)

UNITED STATES OF AMERICA,

               Respondent.

........................................................................

AMON, UNITED STATES DISTRICT JUDGE

David Thai ("Thai") petitions this Court for habeas corpus relief pursuant to 28 U.S.C. §

2255. For the reasons set forth below, Thai's petition is denied.

## I.      Background

Following a jury trial before this Court, Thai was convicted of a series of crimes

involving murder, assault, robbery, extortion, and racketeering. On October 23, 1992, Thai was

sentenced principally to two concurrent terms of life imprisonment, plus one term of twenty

years, two terms of ten years, and one term of three years, all to be served concurrently with his

life terms.[1]

On November 12, 1999, this Court received Thai's motion to vacate conviction pursuant

to 28 U.S.C. § 2255, claiming ineffective assistance of counsel and the unconstitutionality of the

---

[1] On appeal, Thai's conviction for Count 15 of the indictment, which charged conspiracy
to assault with a dangerous weapon "for the purpose of . . . maintaining and increasing position
in the BORN TO KILL, an enterprise engaged in racketeering activity" in violation of 18 U.S.C.
§ 1959, was reversed. His remaining convictions were upheld. United States v. Thai, 29 F.3d
785 (2d Cir. 1994).

racketeering statute under which he had been convicted. Thai claimed that he initially filed his motion on or about April 22, 1997, although this Court has no record of such a filing. The first document received by this Court was received two years later, in November 1999. Included in the November 1999 filing, however, was a petition for habeas corpus dated April 18, 1997.

The government responded to Thai's petition, arguing that it was both untimely and without merit. Prior to a decision by this Court, on May 9, 2000, Thai made a motion to withdraw his § 2255 motion without prejudice. This Court issued an order advising Thai that by withdrawing his petition he risked that any future habeas petition might be considered "second or successive," requiring certification by the Court of Appeals under the gatekeeping provisions of the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. §§2244(b)(3), 2254, 2255 (2000). Without resolving whether any later petition would in fact be considered "second or successive," this Court informed Thai that it would withdraw the petition unless he directed otherwise by July 6, 2000. On July 25, 2000, having heard nothing from Thai, this Court deemed the initial petition withdrawn and closed the case.

In or about August 2001, Thai filed a motion to file a second or successive habeas petition in the Second Circuit. The Second Circuit reserved decision and directed that Thai be appointed counsel and that counsel should address the question of "whether [Thai]'s first § 2255 motion, which was dismissed by the district court at the petitioner's request, constitute[d] a decision on the merits for second or successive purposes under [AEDPA]."

While this motion was pending, in November 2003, Thai wrote to this Court, seeking to collaterally attack his conviction on the grounds of newly discovered evidence. On December 31, 2003, this Court issued an Order declining to accept Thai's petition in light of the

proceedings before the Circuit and directed the Clerk of the Court to transfer his petition to the Court of Appeals.  On November 23, 2004, the Court of Appeals issued its Opinion denying Thai's motion to file a second or successive habeas petition as moot because his initial habeas petition was not dismissed on the merits.  The Second Circuit transferred Thai's petition to this Court for consideration.

In January 2005, Thai made two motions before this Court, the first seeking appointment of counsel and the second seeking leave to file a second or successive habeas corpus petition to include claims under Blakely v. Washington, 542 U.S. 296 (2004).  In February of 2005, Thai filed additional motions before this Court, seeking (1) an order directing that he undergo a thorough psychiatric evaluation to get an opinion on his competency and criminal responsibility at the time of the commission of the offenses at issue in this case, and (2) a motion to amend/supplement his initial 2255 motion to include claims pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely, and United States v. Booker, 543 U.S. 220 (2005).  Thai also submitted several letters seeking to supplement motions he had previously made.  On April 8, 2005, this Court issued an Order granting his motion to amend with Apprendi, Blakely, and Booker claims.  Subsequently, on April 21, 2005 this Court received a Mandate from the Court of Appeals deeming Thai's petition to file a second or successive petition raising Blakely claims moot and transferring his application "for consideration of the successive petition as an amendment to the original § 2255 motion."

On May 12, 2005, this Court issued an order in which it attempted to clarify the grounds on which Thai sought relief and requested that he inform the Court if said recitation were incorrect.  In that same order, the Court declined Thai's request for appointment of counsel.

However, in light of Thai's response, the Court subsequently appointed him counsel and directed both parties to brief the merits of all claims raised by Thai in his various pleadings, as well as the timeliness of those claims. According to Thai's counsel, his current habeas petition pleads relief on the following grounds:

> (1) he was not afforded effective assistance of counsel, as he and his attorney had an acrimonious relationship, language barriers prevented their communication, his attorney failed to produce witnesses regarding his reputation in the Vietnamese community, as well as the social mores of the Vietnamese community, and his attorney did not allow him to take the stand;
> (2) the government violated its obligations under Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972) by failing prior to trial to provide documents containing government reports of all of the witness proffers;
> (3) the RICO Act is unconstitutional as it violates the right to freedom of association under the First Amendment of the United States Constitution;
> (4) petitioner's sentence violates Apprendi, Blakely, and Booker; and
> (5) petitioner was suffering from a mental disease or defect at the time of trial that prevented him from understanding the nature and consequences of his criminal trial.

(See Pet. Letter of April 25, 2006.) These grounds substantially mirror the grounds which this Court set forth in its May 12, 2005 order, and Thai has not since informed the Court of any additional grounds upon which he wishes to seek relief. Thus, these are the grounds for relief which the Court will consider at this time.

## II.     Discussion

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner has one year from the date his conviction becomes final to bring a collateral attack on his conviction, absent special circumstances outlined in 28 U.S.C. § 2255. In addition, subsequently filed pleading amendments relate back to the filing date of the original plea, and are therefore timely, only when both the original plea and the amendment arise out of the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c)(2).

In <u>Mickens v. United States</u>, 148 F.3d 145, 148 (2d Cir. 1998), the Second Circuit held

that the statute of limitations established by AEDPA did not apply to habeas petitions filed on or

before April 24, 1997. Thai contends that he filed a motion pursuant to 28 U.S.C. § 2255 by

mailing it to this Court on April 22, 1997, two days before the grace period ended, thereby

avoiding the statute of limitations. This Court has no record of such a filing. Rather, the first

document received by this Court was received two years later, in November 1999. In that filing,

Thai attached a copy of the motion allegedly filed in 1997.

Even if we presume that Thai did properly mail his habeas petition in April of 1997, his

several subsequent pleadings are only timely to the extent that they relate back to the initial 1997

pleading that Thai provided this Court in 1999. That is, Thai's new claims must arise out of the

same "conduct, transaction, or occurrence" as his original 1997 claims. Thai's 1997 filing

asserted three grounds for relief:

> (1) an ineffective assistance of counsel claim predicated upon his attorney's refusal to let
> him testify at trial;
> (2) an ineffective assistance of counsel claim predicated on his lawyer's failure to
> "appeal on prosecutor's misconduct during closing arguments"; and
> (3) a claim that the RICO Act is unconstitutional under the Tenth Amendment.

Thai's 1997 filing did not contain any additional statements or arguments beyond these limited

claims.

Noting that "federal habeas claims, by their very nature, challenge the constitutionality of

a conviction or sentence, and commonly attack proceedings anterior thereto," the Supreme Court

has rejected "a comprehensive definition of 'conduct, transaction, or occurrence, [under which]

virtually any new claim introduced in an amended habeas petition will relate back." <u>Mayle v.</u>

<u>Felix</u>, 125 S. Ct. 2562, 2564 (2005). Instead, the Court has endorsed a definition of "conduct,

transaction, or occurrence" that would allow "relation back only when the claims added by amendment arise from the same core facts as the timely filed claims, and not when the new claims depend upon events separate in both time and type from the originally raised episodes." Id. Thus, "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Id. at 2566.

### A. Thai's <u>Brady</u> claims

With regard to Thai's <u>Brady</u> claims, the only reference to prosecutorial misconduct in the 1997 petition is a claim that Thai's counsel was ineffective for failing to "appeal on prosecutor's misconduct during closing arguments." Thai did not mention <u>Brady</u> and its progeny, nor did he refer to the government's witnesses nor their proffers. Thus, Thai's <u>Brady</u> claim is time-barred, as it does not relate back to Thai's initial 1997 habeas petition.

Furthermore, even if Thai's <u>Brady</u> claims were not time-barred, he has failed to identify which statement, if any, the government purportedly withheld. Thus, Thai has not "set forth in summary form the facts supporting each of the grounds thus specified" as required under Rule 2 of the Rules Governing Habeas Proceedings. Accordingly, Thai's <u>Brady</u> claims fail.

### B. Thai's claim that RICO violates the First Amendment

Thai's claim that RICO violates the First Amendment is likewise time-barred. Although Thai asserted the unconstitutionality of RICO in his 1997 petition, that claim was predicated on an alleged violation of the Tenth Amendment. Thai did not refer either to the First Amendment nor to freedom of association. As "federal habeas claims, by their very nature, challenge the constitutionality of a conviction or sentence," <u>Mayle v. Felix</u>, 125 S. Ct. at 2564, a claim

attacking the constitutionality of a statute under the First Amendment does not relate back to a claim attacking the constitutionality of a statute under the Tenth Amendment.

Furthermore, even if the Court were to find that Thai's First Amendment claim did relate back to his Tenth Amendment claim, Thai's First Amendment claim is barred, as Thai did not raise the constitutionality of RICO on direct appeal and has not demonstrated cause for and prejudice resulting from that failure.

Finally, even if this Court could address Thai's claim regarding the constitutionality of RICO on the merits, it is clear that such a claim would fail. The Second Circuit has held that the constitutional safeguards of the First Amendment do not extend to an "association" that commits criminal acts. See, e.g., Jund v. Town of Hempstead, 941 F.2d 1271, 1282-83 (2d Cir. 1991) (noting that "[i]t is elementary that criminal acts . . . may be punished" and holding that RICO liability for Hobbs Act violations does not interfere with rights of political committee members to free political association); see also United States v. Int'l Bd. of Teamsters, 941 F.2d 1292, 1297 (2d Cir. 1991) ("[A]n individual's right to freedom of association may be curtailed to further significant government interests."). Thus, Thai's claim that RICO violates the First Amendment is without merit.

### C. Thai's claims that his life sentence is unconstitutional

Thai's claim that his sentence of life imprisonment violates Apprendi, Blakely, and Booker is also time-barred. Thai's 1997 habeas petition made no reference to the constitutionality of his life sentence nor does it allege that his sentence was imposed based upon facts which had not been found by the jury. Thus, Thai's Apprendi, Blakely, and Booker claims do not relate back to his 1997 habeas petition and are untimely.

Furthermore, Apprendi, Blakely and Booker claims are not applicable retroactively on collateral review. See, e.g.,Guzman v. United States, 404 F.3d 139 (2d Cir. 2005) (rejecting the retroactive application of Booker on collateral review); Carmona v. United States, 390 F.3d 200 (2d Cir. 2004) (holding that Blakely does not apply retroactively to second/successive habeas petition); Coleman v. United States, 329 F.3d 77 (2d Cir. 2003) (holding that Apprendi is not applicable retroactively on collateral review).

### D.     Thai's claims regarding his alleged mental disease

In addition, Thai is barred from asserting that he was suffering from a mental disease or defect at the time of trial that prevented him from understanding the nature and consequences of the criminal trial, as his initial 1997 habeas petition contains no reference to his mental state.

Furthermore, Thai has failed to provide support for this claim. Thai's only support for his claim of mental incompetency is his psychiatric record for the period of April through December 1992, during which time he was prosecuted and tried. These documents do not support Thai's contention that he was mentally incompetent during trial. Although the documents refer to Thai's claims of visual hallucinations and strange desires, beginning in April of 1992, the psychology reports upon which he bases his claim repeatedly indicate that Thai's "[c]urrent mental status, emotional expression, and behavior do not suggest significant mental health problems." The reports also indicate that Thai refused psychiatric medication, claiming that he wanted "natural treatment." Thai's counsel additionally stated, in an affidavit, that Thai "gave [him] no reason to question his mental competence to stand trial," that Thai was "a lucid, active participant in his defense" and that he did not "exhibit any behavior . . . suggesting that he was suffering from psychotic episodes or suicidal depression." (See Aff. of David Richman,

dated September 25, 2005 at ¶ 7.) Thus, even if Thai's claims of mental defect were not time-barred, he has presented no evidence to support his claim that he was mentally incompetent at the time of trial.

### E. Thai's ineffective assistance of counsel claim

Finally, with regards to his ineffective assistance of counsel claim, the scope of the claim available to Thai is limited. Thai's 1997 petition claims ineffective assistance of counsel on two grounds, namely his attorney's alleged refusal to let him testify at trial and his attorney's alleged failure to "appeal on prosecutor's misconduct during closing arguments." In its current incarnation, Thai's habeas petition additionally argues that he and his counsel had difficulty communicating because of a language barrier and had an acrimonious relationship, and that his attorney did not interview potential witnesses. To the extent that these latter claims are independent bases on which to determine that Thai's counsel was ineffective, they are time-barred, as they were not referenced in his 1997 habeas petition. Therefore, these latter claims may only be considered to the extent that they are related to his claim regarding the alleged failure to allow him to testify. Finally, Thai no longer advances his theory of ineffective assistance of counsel predicated upon his attorney's failure to appeal the prosecution's alleged misconduct during closing arguments.

Thai's claim that his attorney was ineffective because he refused to allow him to testify fails on the merits. In order to prevail on a claim of ineffective assistance counsel in violation of the Sixth Amendment, a petitioner must show that his counsel's performance was deficient and that the deficiencies caused actual prejudice to his defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984); see also, e.g., United States v. Cohen, 427 F.3d 164 (2d Cir. 2006). In

order to establish deficient performance, a petitioner must show that the attorney's conduct fell "outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. In order to establish actual prejudice, a defendant must show that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." <u>Id.</u> at 694. Furthermore, the Second Circuit has held that "the decision whether to testify belongs to the defendant and may not be made for him by defense counsel," and further that "the burden of ensuring that the defendant is informed of the nature and existence of the right to testify rests upon defense counsel . . . [and] is a component of the effective assistance of counsel." <u>Brown v. Artuz</u>, 124 F.3d 73, 78-79 (2d Cir. 1997).

However, the Second Circuit has held that a defendant's assertion that his counsel refused to permit him to testify, if unsubstantiated and based upon self-serving testimony, may be defeated by the submission of "a detailed affidavit from trial counsel credibly describing the circumstances concerning appellant's failure to testify." <u>Chang v. United States</u>, 250 F.3d 79, 85 (2d Cir. 2001). Thai's trial counsel, David Richman, has submitted such an affidavit, indicating that he informed Thai of his right to testify and that it was ultimately his own decision whether to do so, but that he strongly advised against testifying because "his credibility would have been severely impeached if not destroyed on cross-examination" and because testifying "would have risked undermining . . . a more sound defense strategy - namely, vigorously attacking the credibility of the government's accomplice witnesses." (Aff. of Daivd Richman, dated March 31st, 2001 at ¶ 5.) Mr. Richman further indicated in his affidavit that Thai agreed with his advice and did not indicate that he wished to testify in his own defense. (<u>Id.</u> at ¶ 6.)

Thai claims, in his 1999 Memorandum in support of his habeas petition, that he was

unaware that the decision to testify was his own and that his attorney "simply told [him] that he would not be testifying." (Pet.'s Mem. at 9-10.) However, Thai presents no evidence, other than his own self-serving testimony, to contradict Mr. Richman's affidavit. Furthermore, Mr. Richman's version of events is entirely credible. Thai claims that he wished to take the stand to testify that he ran a successful business selling counterfeit watches and would not have risked this success by engaging in street-level robberies and extortion. Thai also wanted "to explain that his criminal success placed him in a position where young Vietnamese men often came to him for assistance in resolving disputes, and allowed him the opportunity to use them occasionally in his counterfeit watch business." (Pet. Letter dated April 25, 2006 at 3.) Thai further wished to support this argument with testimony of witnesses "who would testify as to the Asian American community's reliance on [dispute solvers or elders]." (Pet.'s Mem. at 10.)

However, Mr. Richman states that Thai was "unable to provide [him] with any documentary evidence to corroborate his claims of [the] success" of his counterfeit watches business and that "[i]f anything, the government's evidence demonstrated that [his] purported business had not achieved the financial heights he claimed it had." (Aff. of David Richman, dated September 25, 2005, at ¶ 5.) Indeed, his claim that he made $13 million dollars in a year contradicts the statement made by Mr. Thai in his Presentence Report that he averaged only $700 to $1,000 per week in connection with his counterfeit goods business, and that he had no assets. (See Presentence Investigation Report ¶¶ 221-22.) In addition, Mr. Richman states that Thai never provided him with the names of any potential witnesses to substantiate his claims about the business. (Aff. of David Richman, dated September 25, 2005, at ¶ 5.)

In his 1999 Memorandum in support of his 1997 petition, Thai tries to bolster his

ineffective assistance of counsel claim by asserting that he and his counsel had an "acrimonious relationship" and had difficulty communicating because of Thai's allegedly poor English skills. To the extent that Thai is claiming that language difficulties and an acrimonious relationship indicate ineffective assistance of counsel, independent of his attorney's refusal to allow him to testify, such claims are time-barred; Thai did not reference any language difficulties or any hostility with his attorney in his initial 1997 habeas claim. However, even if these allegations relate back to his 1997 claim, by explaining why or how his attorney refused to let him testify, they are unsupported by the evidence of record. According to Mr. Richman, Thai, a resident of the United States since 1975 (see Presentence Investigation Report ¶ 216), had no difficulty understanding or communicating with his counsel. (See Aff. of David Richman, dated September 25, 2005 at ¶ 3.) Mr. Richman states that throughout their relationship, he and Thai communicated in English, and that "[a]t no time did Mr. Thai exhibit any signs of failing to comprehend me; nor did I have any difficulty in understanding Mr. Thai." (Id. at ¶ 3.) Furthermore, Mr. Richman notes that when Thai was interviewed for a network television program that focused on the presence of the counterfeit goods business in the United States, "[n]o interpreter was present at the interview, and Mr. Thai had no difficulties conversing with the reporter in English." (Id. at ¶ 4.) Mr. Richman also indicated that his relationship with Thai was not marked by any rancor or animosity, let alone any difficulty rising to the level of impeding his trial preparation in the case. (Id. at ¶ 6.) Thai has presented no affidavits or any other evidence to support his contention that was unable to communicate with his attorney due to limited English skills or that his relationship with his attorney was acrimonious in any way.

Finally, Thai has failed to show that the alleged refusal to allow him to testify, or any

other action of his attorney, prejudiced his case in any way.  The evidence against Thai at trial

included the testimony of four accomplice witnesses, numerous tape recordings of Thai's direct

involvement in several of the crimes, civilian witnesses present at certain of the crimes, and law

enforcement surveillance which placed him with other defendants moments before certain of the

other crimes.  The government also presented documents against Thai, including hotel and

telephone records connected him to certain crimes.  Finally, a search of Thai's house revealed

other incriminating evidence, including a gun, a silencer, ammunition, a map reflecting the site

of one of the robberies, and jewelry that had been stolen in another robbery.  (See Def. Mem.

dated April 3, 2000 at 7-8.)  There is no reasonable probability that Thai's testimony would have

been able to overcome this overwhelming evidence against him.  Rather, if Thai, an admitted

purveyor of counterfeit goods, had testified, he would have put his own credibility at issue,

thereby undermining the defense strategy of questioning the credibility of the government's

witnesses.  In short, Thai cannot show that his attorney's alleged refusal to let him testify

prejudiced his case. See Brown, 124 F. 3d at 80-81 (upholding denial of habeas petition based on

attorney's alleged failure to allow defendant to testify where defendant failed to show prejudice).

## CONCLUSION

For the reasons set forth herein, the petition is denied.  Further, a certificate of

appealability will not be issued because Thai has not made a substantial showing of the denial of

a constitutional right. See 28 U.S.C. § 2253(c)(2). The Clerk of the Court is instructed enter

judgment in accordance with this Order and to close the case.

SO ORDERED

Dated:  Brooklyn, New York                          Carol Bagley Amon
        December 29, 2006                          United States District Judge